Weygandt, C. J.
This controversy involves the ownership of the proceeds of registered United States savings bonds series “G” of the face value of $29,100.
The Court of Probate appointed the two guardians on August 6,1954, after finding Mrs. Sachs physically and mentally incompetent.
At various times prior to that date Mrs. Sachs had purchased the bonds with her own money but had them registered in the names of “Lydia Z. Sachs or James I. Goodwin.” She placed the bonds in her own safe deposit box where they were found in an envelope labeled “Property of James I. Goodwin.” She never delivered the bonds to Goodwin but retained com *272 píete possession and control over them. After the guardians were appointed, they did the same. As some of the bonds matured, the guardians, with the permission of the Probate Court, cashed them and deposited the proceeds in the guardianship savings accounts while Mrs. Sachs was still living. Goodwin testified that he furnished none of the money with which the bonds were purchased and never had possession of them but that he had seen the bonds and knew they were registered in the two names. At the time of the death of Mrs. Sachs, bonds of the face value of $11,000 had not matured, and the guardians delivered these to Goodwin as the survivor of the two individuals in whose names the unmatured bonds stood. Hence, these bonds are not involved in this litigation. After the death of Mrs. Sachs, the guardians paid the proceeds of the previously matured bonds to the executors of her estate.
These undisputed facts present several questions which were resolved by the Court of Probate in the following finding of law and fact:
“Complying with the request of finding of law and fact and conclusions of law, by exceptor, James I. Goodwin through his attorneys, the court from the evidence adduced at the trial of this cause, makes the following fact:
“The guardians were duly appointed and qualified by the Probate Court of Licking County, Ohio, and among the assets of the ward were forty thousand dollars ($40,000) worth of United States savings bonds, series G, registered in the name of Lydia Z. Sachs or James I. Goodwin as co-owners. Said bonds were in an unsealed envelope in the safe deposit box of the ward, Lydia Z. Sachs, and written on the envelope was ‘property of James I. Goodwin.’ James I. Goodwin, according to his own testimony, knew of the existence of these bonds prior to the guardianship, and furnished no part of the purchase price of said bonds, never had possession of said bonds or dominion over them, and there was never any delivery of the bonds, actual or constructive, by the ward to James I. Goodwin, during the lifetime of the ward.
“By the lapse of time the bonds matured, and the guardian redeemed the same and deposited the proceeds thereof in the accounts of the guardian. The record also shows an applica *273 tion filed in the Probate Court for authority to redeem the bonds at maturity, and the granting of such authority.
“The evidence further shows that the redemption of the bonds was prior to the death of the ward, and that the proceeds of the bonds were utilized from time to time, along with other available cash in the maintenance of the ward. There were other investments of the ward maintained by the guardian.
“The record further shows that the first objection on the part of the exceptor was made after the death of the ward in the way of the exceptions filed to the final account of the guardians.
“The evidence further shows that immediately prior to the appointment of the guardians the ward had complete possession of dominion and control over the bonds, and that the guardians after their appointment, and until the redemption of said bonds, continued such possession, dominion and control previously vested in the ward.
“The court makes the following separate finding of law:
“B. C. 2111.14 of Ohio provides that the duty of a guardian is ‘to manage the estate for its best interest of his ward.’
“B. C. 2109.38 of Ohio provides that a guardian retain all investments, providing the circumstances are not such as to require the guardian to dispose of such investments in pursuance of his duties.
“The guardian had no authority under the law of Ohio to enter into a new or different contractual relationship covering joint and survivorship bonds, after the maturity of said bonds. (Abram v. Nickel, 50 Ohio App., 500, 198 N. E., 887.)
“The law of Ohio as established in DiSantos Estate, 142 Ohio St., 223, 51 N. E. (2d), 639, provides that the regulations of the Treasury Department control the ownership of the bonds, as between the owners listed according to the terms of the bonds and regulations of the Treasury Department.
“The guardians were under a duty imposed by E. C. 2111.14 to redeem the bonds upon maturity and deposit them in the guardians’ account and use the proceeds for the maintenance as the interest having ceased.
“According to the regulations of the Treasury Department after knowledge of an adjudication of incompetence, the depart *274 ment can make payment over to the guardians. Sec. 315.10 of exhibit 1.
“That the death of the ward terminates all duties and powers upon the part of the guardian. 106 Ohio St., 437, Simpson v. Holmes.
“That the guardians do not possess the authority to perform the functions which the exceptor now demands.
“That as a matter of law, the exceptions should be overruled. ’ ’
In an extended and carefully reasoned opinion the majority of the Court of Appeals reached a similar conclusion. It was said in part:
‘‘ The basic question is whether, upon a factual situation as herein set forth, as a matter of law, the proceeds of the matured bonds, which were redeemed during the lifetime of 'the ward, belong to Goodwin, the exceptor, or to the estate of Lydia Z. Sachs.
“We find no reported Ohio case with a state of facts resembling those in this pending cause.
“There is no question that had Lydia Z. Sachs continued to be competent she could have cashed the bonds and claimed the entire proceeds for herself, to do with thereafter as she might see fit, for they were purchased entirely with her funds and she never divested herself of possession, dominion or control over them."
“When Mrs. Sachs purchased the bonds, she selected “G” bonds, which by government regulation are current income savings bonds, upon which she would receive payment of the income semiannually, except that the final six months’ interest is withheld until paid with the principal amount when the bonds are redeemed at or after maturity. She further knew by the provisions thereof that the bonds would bear interest at 2% per cent, per annum, that they would mature 12 years from issue date, and that they would earn no interest after maturity.
“Because Mrs. Sachs retained possession, dominion and control over the bonds, we must conclude that she did not intend to make a gift of them either inter vivos or causa mortis to James I. Goodwin. She did so purchase the bonds that by *275 contract, as a result of government regulation, they would be payable to James I. Goodwin should she die before they were cashed, but she knew that the coutract would mature- in 12 years, at which time the bonds would have to be redeemed or become non-income producing. The only reasonable inference from these facts would be that had she remained competent she would have redeemed the bonds at maturity.
<<* * *
“Much has been said in regard to the guardians having cashed the bonds after they matured, therefore, we must examine the duties of the guardians under these circumstances. Rev. Code of Ohio, Sec. 2109.42 provides:
" “ ‘A fiduciary who has funds belonging to a trust which are not required for current expenditures shall, unless otherwise ordered by the Probate Court, invest or deposit such funds within a reasonable time according to Section 2109.37 of the Revised Code. On failure to do so, such fiduciary shall account to the trust for such loss of interest as is found by the court to be due to his negligence.’
í Í * # *
“The bonds having matured so as to be due and payable and no longer being income producing, it became the duty of the guardians to redeem them, which they could have done without court order but for the fact that they had been deposited with the bank in lieu of bond. Because they had been so deposited as security, the guardians were required to, and did, make application to the court to secure release of the certificates for purpose of redemption. There is no provision in the U. S. Treasury Regulations which would have required the guardians to obtain a court order authorizing them to redeem the bonds, other than of their authority as guardians.
“Treasury Regulations (exceptor’s exh. No. 1) Sec. 315.10 (a)
“ * * The request for payment must be supported by proof of the representatives authority. Such proof may consist of a court certificate, or a certified copy of the representatives letters of appointment, issued by the court having jurisdiction.’
“It is therefore our finding when bonds are purchased en *276 tirely -with funds of the ward, who retains possession, dominion and control over them, and which, after coming into possession and control of the guardians, mature in accordance with the terms of purchase and will no longer produce income, the guardian of the ward, who became incompetent subsequent to purchase, may after maturity of the bonds, redeem them without the necessity of application to the court and without notice to a co-owner who never had possession, who never invested any money therein, but who, by contract and government regulation, had a right of survivorship in the bonds during the term thereof, until their maturity and redemption. ’ ’
One contention of the appellant is that as a co-owner he was entitled to notice and a hearing as to redeeming the matured bonds. The Court of Appeals effectively answered this as follows:
“Appellant, Goodwin, contends that application of the contract theory implies that Mrs. Sachs, while competent, made a contract with the United States government for the primary benefit of Goodwin, a third party, who thereby acquired a definite right, title and interest in the bonds as co-owner. With this we cannot agree. We find that Lydia Z. Sachs, while competent, made a contract with the United States government primarily for the benefit of herself, to continue for a period of twelve years but with the provision that should she deliver possession of the bonds to Goodwin during those twelve years and before redemption upon maturity, or should she die during that period still having them in her possession, then upon the happening of either of these conditions they would belong to Goodwin; but otherwise, upon maturity, she would cash the bonds, of which she was retaining possession and control, and make new arrangements for disposition of the funds. She had not seen fit, while competent, to deliver possession or control of the bonds to Goodwin and the guardians had no right to do that which she herself had not seen fit to do. Upon maturity, the bonds were properly cashed by the guardians and the existing contractual relationship terminated in accordance with the terms thereof.
( C # # *
“In the case before us the guardians did not attempt to make a new contract for their ward. They simply carried out her contract in accordance with the terms thereof, and having *277 received the proceeds upon maturity, they could not then make a new contract on her behalf, which would benefit Goodwin or any other third party, for it was their duty to preserve the guardianship estate for the benefit of their ward.
“These bonds did not pass to Goodwin as a gift inter vivos or causa mortis because Mrs. Sachs never saw fit to deliver possession or control to him. They did not go to him by contract because by the terms of the contract, it terminated prior to her , death. He cannot claim by will, for he was devised other property but not these bonds or the proceeds therefrom. ’ ’
Hence, a majority of this court is of the opinion that, under the particular facts in this case, the conclusion of the lower courts is correct. The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Zimmerman, Taet, Matthias, Bell and Eadcliee, JJ., concur.
Eadcliee, J., of the Fourth Appellate District, sitting by designation in the place and stead of Herbert, J.